## Case No. 6,172.

### HARTUPEE v. THE COAL BLUFF NO. 2.

[26 Pittsb. Leg. J. 145.]

District Court, W. D. Pennsylvania. 1879.

IDENTITY OF BOATS OR VESSELS.

A boat with an entirely new hull with parts of the machinery and upper works of an old boat,—the old boat having been abandoned or dismantled before the said parts were used in the new—in such a case the boat is a new one in law, and may bear a new name.

[This was a proceeding in admiralty by A. Hartupee against the steam tug Coal Bluff No. 2.] Thos. M. McFarland, Esq., as commissioner, recently filed an opinion in the above case in which a number of questions were passed upon, the most interesting probably, being on the question of identity of boats or vessels, which is given in full, as follows:

The most difficult question involved in this case is that of the identity of boats or vessels; should the liens against the former boat, "Coal Bluff," be allowed to participate in the fund arising from the sale of "Coal Bluff No. 2"? I have made a diligent search of the authorities on this question, and given the same due consideration. My views and conclusions are as follows:

In Ben. Adm. p. 125, it is stated that "a ship is always the same although the original materials of which it was composed may, by successive repairs and alterations, have been in the course of time entirely changed." A ship would undoubtedly remain and continue to be the same ship, however extensively or frequently repaired; and even if at last all her original materials had disappeared. 1 Pars. Mar. Law, p. 72. Emerigon observes in one of his works, that a ship is always presumed to be the same though all the materials which at first had given it existence have been successively changed. History records the fact that the Athenians preserved the galley of Salamis during more than a thousand years; they were at great pains to replace the old with new planks, and hence arose a great dispute among the philosophers of the time, namely, whether this vessel, of which there did not remain a single original piece, was the same that c.. .eyed Theseus in returning from the Isle of Crete. Molloy, summing up all the old authorities on this point says: "If a ship be ript up in parts and repaired in parts, and taken asunder in parts, yet she remains the same vessel and not another; nay, though she has been so often repaired that there remains not one stick of the original fabric." It appears that there are but few cases reported on this question of identity of vessels, but we have found another decision in which this question is involved. We refer to the opinion of the Hon. Judge Woods, of the Fifth judicial circuit. Smith v. The Royal George [Case No. 13,102]. In this case, a new hull was built; the boilers of the steamer called the "George" were used, and her pilot house and roof were removed to, and put on the new hull, and when thus completed, the boat was considered a new boat, and called the "Royal George." Although the question that was decided in this case was, that a contract for labor or materials furnished to build a vessel, is not a maritime contract,—the reconstructed boat is recognized throughout the opinion, as a new boat. The changes made in connection with the said steamer George, correspond to the changes made in connection with the said steamer Coal Bluff, and this decision is, therefore, germane to the point under consideration. Desty on Shipping and Admiralty says: "Where the frame of the hull is not broken up in rebuilding, the vessel retains its name and identity; it is regarded as the same vessel in law; but where each timber is first dislocated before being used in the new vessel, though the model be preserved, it is regarded as a new vessel, and the name may be changed." This latter view is based upon the decision referred to in U. S. v. The Grace Meade [Id. 15,243], and that decision is the best authority I have been able to find after an exhaustive research of the various decisions on this question.

The opinion of the commissioner is, in conclusion, where the absolutely essential portions of an old vessel, as the frame of the hull, is preserved intact, in reconstruction, the vessel is considered the same in law, but when not so preserved, and the absolutely essential portion new, as the hull, then the vessel is a new one, and may bear a new name. When first considering the question at what point transformation from the old to the new takes place, it is somewhat perplexing, and a satisfactory decision is not easily arrived at. But is it not owing to the fact that there is a liability to confuse the idea of repairs, or successive repairs, with that of constructing anew, although a small part of the old may be introduced into the new? To arrive at a proper conclusion, I consider it necessary not to overlook the fact that dismemberment, or abandonment of the old, is material in disposing of this question. As illustrative: if a building were almost, or entirely changed by continuous repairs, that building would be considered the same, or an old building; but if it were abandoned and a new one erected and before completion a few parts of the old were placed in the new, it would in law, in my opinion, be held as a new building. This is at present, we learn, the general doctrine adopted by the government of the United States in its laws of registration as to names of vessels. But when we carefully scrutinize the above doctrine as laid down by ancient writers, and also in our text books on admiralty, it will be observed a vessel is considered to remain the same in case of successive changes, or changes from time to time, until it may be there remains not one plank of the original fabric, but the question we are required to dispose of is, we apprehend, different. In this case repairs were not made by degrees until the boat was almost, or wholly

changed, but an entirely new hull was built, as stated in the testimony, hereto attached, and the boat was named and registered "Coal Bluff No. 2." An entirely new hull having been built, does this become a new boat although the old cabin and machinery were used? The strongest and most pertinent decision I have found is U. S. v. The Grace Meade [supra]. The facts in this case were briefly and substantially as follows: The steam tug Agnes was greatly damaged, her boiler having exploded. During her reconstruction, the old shaft, wheel and engine frame, and a few other parts of the old vessel were used. A new keel was built, although a few feet of the old keel was attached, or added to the new; all the old timbers put into the new vessel made up an aggregate of 1,200 feet, the whole number of feet of timber used in the new vessel, 30,000, and the name "Agnes" changed to that of "Grace Meade." When application was made for the registration of the Grace Meade, or the so-called new vessel, the question then arose as to the identity of vessels, or whether in point of law the Grace Meade was a new vessel, or the old vessel Agnes rebuilt. The Honorable Judge Hewes, in rendering his decision says, inter alia, "True, one-twentieth or one-thirtieth of the timber of the Agnes was used in constructing the Grace Meade; but it would be idle to pretend that in point of fact the use of so small a portion of the material of one vessel made the new one the same as the old. The fact of the machinery being in great part the same in the two vessels, has no bearing upon the question of identity." Reasoning from analogy, we find that as to the boat Coal Bluff there were no repairs, gradual or successive; but, a new hull having been constructed and but comparatively little of the timber of the old boat entering into the new, we are of the opinion that the Coal Bluff No. 2 is a new boat. So would it be true, under the same conditions, of a boat or vessel. When this distinction is made, I think the difficulties first encountered will be overcome and the question more readily solved. All claims against the old boat Coal Bluff are consequently disallowed to participate in the fund for distribution arising from the sale of the new boat Coal Bluff No. 2.

[In Case No. 8,687 a claim of the builders of the new hull was disallowed by the commissioner. and the libel dismissed for want of federal jurisdiction.]